40 So.2d 339

### FREELAND v. STATE.
8 Div. 680.

Court of Appeals of Alabama.
Feb. 8, 1949.

Rehearing Denied March 8, 1949.

H. G. Bailey, of Boaz, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for, and by a jury convicted of, murder in the second degree.

The appellant and deceased were among a number of men and women attending a dance being held at a private home in Marshall County.

The evidence shows conclusively that the appellant and deceased became embroiled in a physical difficulty inside the house, but were separated.

From this point on the evidence presented by the State, and that presented by the defense is in hopeless conflict.

The State's evidence is directed toward showing that shortly after this original difficulty the appellant attacked the deceased out in the yard and struck him with a knife. The deceased's body was found a few moments later in almost the identical spot where appellant had been seen to strike the deceased with his knife. The deceased was taken to a hospital where he died several hours later as a result of a stab wound in the left portion of his chest.

The evidence presented by the defense was directed toward showing that after their original difficulty the appellant and deceased met at a doorway and another scuffle ensued and they struggled out onto a porch. The appellant testified that he did not remember going out into the yard during this second struggle, but that when he got loose he returned inside the house and the deceased went into the yard. Appellant remained in the house until the dance ended. Appellant denied that he had a knife with him, or that he stabbed the deceased on this occasion.

Purely a question of fact was thus presented by this conflicting evidence, the true version of which was solely within the province of the jury to determine. It is apparent from their verdict that the jury saw fit to accept the evidence of the State as tending to establish the true picture of what occurred. The evidence in our opinion tended to abundantly justify the jury's verdict. This being so no error resulted in the court's refusal of appellant's written request for the general affirmative charge.

Appellant's counsel argues that this cause should be reversed because of the trial court's refusal to grant his motion for a continuance because of the absence of witnesses, and the court's later refusal to put the State upon showings for the witnesses.

In this connection the record shows the following:

"This cause coming on to be tried on the 19th day of November, 1947, which was the date set for the trial thereof, before his Honor Reuben H. Wright, the following proceedings were had and done, to-wit:

"After a call of the witnesses for the defendant:

"Mr. Bailey: Let the record show that these witnesses for the defendant have not been served but that summons have been issued for them. The defendant moves for continuance on account of the absence of George Wattles, Ross Goodwin and L. V. Reynolds. These witnesses are eye witnesses and are the defendant's main and sole main witnesses to the difficulty. This is the first call of this case. Defendant has called for the process of the Court to get the attendance of these witnesses. Attachments were issued for them and are not yet returned.

"The Court: Let the record show the defendant has twenty-three witnesses summoned and eleven responded to answer. A showing is admitted for one of them.

"The Court states that he will give you all the power of the Court to get the witnesses named George Wattles, Ross Goodwin and L. V. Reynolds. The Court instructs the sheriff now to call the sheriffs in the counties where they are to see if he can find them.

"Mr. Bailey: The defendant is forced into trial without answer as to the availability of these witnesses and without knowledge of the availability of the witnesses at this time, but the defendant has asked the process of the court to get the witnesses present at this time.

"The Court: Overrule the motion for continuance.

"Mr. Bailey: We except.

"This cause coming on to be tried, was heard on the 20th day of November, 1947 before his Honor Reuben H. Wright, special judge presiding, and a Jury, when the following proceedings were had and done, to-wit:

### Evidence

"Mr. Bailey: Defendant moves now that we be permitted to have a showing for these witnesses: George Wattles and Ross Goodwin.

"Mr. Conway: We object to the showings.

"The Court: Sustained.

"Mr. Bailey: These witnesses were duly summoned on about the 7th of November. They were not here when the case was called. That we asked for the process for all the witnesses for the defendant. That we undertook ourselves to get these two witnesses. We have done our best. It is now stated in the presence of the Court that defendant has reliable information these witnesses will be here at 10:00. We ask for a showing and the Court refuses to give a showing.

"The Court: The State refuses.

"Mr. Bailey: The Court refuses to put these witnesses on a showing.

"The Court: You declined to put them on a showing on yesterday when this case was called. Defendant's counsel first asked for attachments for these two witnesses. The Court ordered attachments for them and instructed the sheriff to get them here. The defendant notified the sheriff not to serve the attachments; that they would undertake to get the witnesses here themselves, and that the witnesses promised to be here at 10:00 o'clock this morning.

"Mr. Bailey: We except to the Court's action. We now, on that motion offer the

contents of our showings for these two witnesses.

"Mr. Conway: We object to his offer.

"The Court: Tender the showings to the State and see what they say.

"Mr. Conway: We object to the showings.

"Mr. Bailey: We claim that due diligence has been used to get them here. If anybody ever tried, we have, and they promised to be here at 10:00 o'clock.

"The Court: The State declines to permit the showing. You undertook to get them here. It is your responsibility. I offered you all the processes of the Court to get these witnesses here.

"Mr. Bailey: We now ask for a continuance and ask permission to get them here. I might state that I made the statement that my man said he would try to get the witnesses here.

"The Court: You have been given the opportunity of all the processes of the Court and you declined it and took the responsibility on yourself."

In connection with the portion of the record quoted above, we note that during the hearing of defendant's motion for a new trial in the court below, wherein the court's action in denying the defendant's motion for a continuance and his refusal to put the State on showings was among the grounds assigned in support of the motion for a new trial, the court in that hearing made the following statement to defendant's counsel:

"The Court: You recall that on the day the case was set for trial I passed the case for one day so you could get the witnesses George Wattles and Ross Goodwin. I told you we would issue attachments for them and get them for you. Thereafter the clerk and sheriff reported to me that you said you would undertake to get them yourself and not to issue or serve the attachments."

The inference is clear from the record that on the day this case was called for trial the court declined defendant's motion to continue the case because of the absence of certain of defendant's witnesses. The inference is also clear that on this day defendant's counsel refused to put the State upon showings for these absent witnesses and asked for extraordinary compulsory processes to obtain their attendance. This request was complied with and attachments for these witnesses were issued under the court's orders, and the case was passed until the next day. Later the defendant's counsel instructed the sheriff not to serve the attachments and took upon the defense the entire responsibility of having the witnesses present in court the next day.

On this next day, when the case was called defendant's counsel attempted to have the court place the State on showings for these witnesses for whose attendance he had assumed responsibility. This the court refused to do after counsel for the State refused to agree to such showings.

It cannot be gainsaid, that on the defendant's showing in connection with his motion for a continuance as disclosed by the record, but that the court was most liberal in granting appellant's motion for extraordinary compulsion processes for his absent witnesses. Even this liberal action of the court was however abated at the instance of the defendant himself and after he had previously that day declined to have the State put upon showings for these witnesses.

■■■ The object and meaning of the constitutional guarantee that a defendant shall have compulsory process for obtaining his witnesses is that a court will exercise its powers, by the processes usual and known to the law to compel the attendance of the witnesses on behalf of an accused. As stated in Childress v. State, 86 Ala. 77, 5 So. 775, 777: "It does not operate to take from the court the discretion as to granting or refusing continuances, or the authority to adopt proper means for ascertaining whether an application for a continuance is made with the view of obtaining a fair trial, or for the mere purpose of delay. The defendant had previously obtained the issuance of subpœnas for his witnesses, which are the ordinary preliminary process to secure their attendance. Extraordinary compulsory process, such as attachment, is not resorted to, until the witness has placed himself in contempt, and the propriety and

the necessity of the process are shown. The court is not bound to order an attachment, ex mero motu, on the failure of the witness to appear in answer to the subpœna. It is not shown that the defendant asked for an attachment or other compulsory process."

In Sapp v. State, 2 Ala.App. 190, 56 So. 45, 46, involving a trial court's denial of a defendant's motion for a continuance because of absence of witnesses, this court said:

"The application for a continuance on account of the absence of one of defendant's witnesses was a matter addressed to the discretion of the court. It appears that the witness was absent at a previous call of the case, and the court then notified the defendant that he could take compulsory process, and that without it the case would not be again continued because of absence of the witness. No attachment was asked for by the defendant. We fail to see that there was any abuse of discretion in the action taken by the court.

"Moreover, the bill of exceptions states that the exception reserved by the defendant was to the refusal of the court to require the state to be put upon a showing of the defendant as to the absent witness and not for a refusal to grant a continuance. *We know of no law requiring a party to admit a showing as to what an absent witness would testify.*" (Italics ours).

It is our conclusion therefore that under the circumstances of this case there was no abuse of the court's discretion in denying the appellant's motion for a continuance or in refusing to put the State upon showings for the absent witnesses.

During the examination of Mrs. Edwards, the wife of the deceased, a witness for the State, the Solicitor attempted to introduce into evidence some clothing and shoes worn by deceased on the night he was killed. In this connection the Solicitor made the following statement:

"We want to show his coat and shoes to the jury and this witness and that shirt that was soaked with blood.

"Mr. Bailey: We object.

"The Court: Sustained."

Counsel for defendant then moved for a mistrial, stating "Counsel for the State has brought around a great box filled with something intimated to the jury as containing clothing of Mr. Edwards and has made statements about the clothes tending to prejudice the jury highly. He said it was soaked in blood and he just as well have showed them as talked it to them."

The trial court has had the following note inserted into the record at this point: "The box referred to was a pasteboard box with top still on it but with white cloth showing through opening in top of box but no blood was showing and no clothing with blood on it was showing and no clothing or anything else was taken out of box."

We are clear to the conclusion that no error can be attached to the court's action in denying appellant's motion for a mistrial. His objection to the admission of the clothes into evidence was sustained. Even though the Solicitor referred to the shirt as blood soaked, the shirt was in nowise presented to the jury. A medical witness testified that there was much blood on deceased when he was received at the hospital, and there was considerable testimony as to blood spots and trails of blood in the yard in the area where deceased was found after he had been cut. In the light of such testimony we cannot see any merit in counsel's argument that merely because the Solicitor referred to a shirt worn by him on the night he was stabbed so highly prejudiced the jury that this cause should be reversed.

At the very end of the cross examination of appellant the Solicitor asked him if deceased had cut him to which appellant answered in the negative. The Solicitor then asked if deceased had made "that scar on your face." Appellant again answered in the negative.

Thereupon counsel for appellant moved to exclude "the statement." The court overruled the motion stating that no objection had been interposed to the question when asked, and having waited until an answer was made, the motion to exclude "comes too late." After some further colloquy, during which the Solicitor stated he

was willing for the statement to be excluded the court granted appellant's motion.

The court's statement of its reason for first denying appellant's motion to exclude "the statement" is of course based on settled principles of the law of evidence. Even so, the court changed its ruling and granted appellant's motion. We find nothing of which appellant can therefore complain.

Refused charges 13, 17, and 18 requested by appellant in writing were affirmative in nature and properly refused under the developed evidence of this case.

Requested charge 10 was properly refused as not predicated on the evidence.

Requested charge 17 was properly refused as being an incorrect statement of the law, in that a reasonable doubt on the part of any one juror does not necessitate a verdict of not guilty.

In our opinion this record is free of error substantially affecting the substantial rights of this appellant and is due to be affirmed. It is so ordered.

Affirmed.